UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 3:19-cr-72-J-34MCR

LARRY BOUKNIGHT
_____/

**REPORT AND RECOMMENDATION[1]**

**THIS CAUSE** is before the Court on Defendant's Motion to Suppress Historically Stored Data ("Motion") (Doc. 25) and the Government's Response thereto (Doc. 31).  For the reasons stated herein, it is respectfully **RECOMMENDED** that the Motion be **DENIED**.

**I.   Introduction**

In a two-count Indictment, Defendant is charged with distribution of a controlled substance on or about September 6, 2018 and September 9, 2018 in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  (Doc. 1.)  On or about September 6, 2018, a person identified in the Indictment as "H.B." died as a result of the use of the controlled substance distributed by Defendant.  (*Id.* at 1.)

On October 17, 2019, Defendant filed the present Motion, seeking to suppress historically stored data for phone number (904) 483-0628, which the

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed.R.Crim.P. 59(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a).  "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).

1

Government obtained as a result of a search warrant issued to T-Mobile on September 27, 2018. (Doc. 25.) Defendant argues that the search warrant violates the Warrants Clause of the Fourth Amendment to the United States Constitution. The Court held a hearing on the Motion on November 13, 2019.[2]

## II. Relevant Factual Background

On September 6, 2018, Haley Bishop ("Bishop" or "H.B.") died from fentanyl toxicity. As part of the investigation into Bishop's death, Detective Jordan M. Dowling[3] with the Jacksonville Sheriff's Office ("JSO") sought to obtain, via a state search warrant, the historically stored data for telephone number (904) 483-0628 between September 1, 2018 and September 7, 2018. In support of his request for a court order authorizing the release of the data, on September 22, 2018, Detective Dowling submitted an affidavit to the Honorable Elizabeth Senterfitt, a Circuit Court Judge, Fourth Judicial Circuit, in and for Duval County, Florida. The affidavit provides in relevant part:

> That Affiant has reason to believe and does believe that this certain Target Telephone located in Duval County, Florida described as follows, to-wit:
>
> **The Historically Stored Data for (904) 483-0628 to obtain incoming/outgoing call records, incoming/outgoing text messages, and historical cell site data within the automated files of the common telephone carrier (T-Mobile) for the dates of September 1, 2018 to September 7, 2018.**

---

[2] The transcript of the hearing (cited as "Tr." followed by the appropriate page number) was filed on November 19, 2019. (Doc. 36.)

[3] Detective Dowling has since been promoted to Sergeant.

2

Herein after referred to as the "Target data" was the product of the use of Larry Bouknight II for the purpose of violating the laws of Florida, relating to felony crime(s), to wit, Homicide and Possession of a Controlled Substance (Heroin/Fentanyl), in violation of Chapter 782.04 & 893.13, Florida Statutes;

AFFIANT'S REASONS for believing the above described device was being used for the purpose of violating the laws of Florida, relating to felony crime(s), to wit, Homicide and Possession of a Controlled Substance (Heroin/Fentanyl), in violation of Chapter 782.04 & 893.13, Florida Statutes, are as follows:

**Affiant's Law Enforcement Background:**

Your Affiant J.M. Dowling is a law enforcement officer for the Jacksonville Sheriff's Office, Jacksonville, Florida and is currently assigned to the Narcotics Unit. Your Affiant has been employed as a sworn, Law Enforcement Officer, with the Jacksonville Sheriff's Office for over five (5) years of law enforcement experience and has held the position of detective for over one (1) year. Your Affiant has received training in the areas of specialized investigative techniques; Interviews and Interrogation, specialized narcotic training and Courtroom Procedures. Your Affiant has been directly involved in a large number of investigations of property related crimes and has made numerous arrests for narcotic related crimes, etc.

**Probable Cause:**

Below are details of a homicide narcotic related death that occurred at 3534 Smithfield Street #1506, Jacksonville, Duval County, Florida 32217. The incident occurred as follows:

On September 6, 2018, the victim was found unresponsive in her apartment located at 3534 Smithfield Street #1506, Jacksonville, Florida 32217. The victim was transported to Memorial Hospital where she was pronounced deceased at 1806 hours. Upon identifying the victim as Haley Bishop, it was learned that Bishop had bought and used heroin earlier in the day at 1762 Sheridan St.

The investigation revealed that Bishop met an unknown male, later identified as Larry Bouknight II, at the store located at 1762 Sheridan St. and purchased $40 worth of heroin on September 6,

> 2018. Kristen Graham arranged the drug transaction for Bishop with Bouknight via cell phone and was with Bishop when she purchased the drugs from Bouknight on the day of her death. Graham showed your affiant text messages arranging the drug transaction with the defendant. There were no apparent signs of foul play but Bishop is a known narcotic abuser. Bishop's body was turned over to the Duval County Medical Examiner Office to determine [the] cause of [her] death.
>
> **Investigative Need For Court Approval:**
>
> Your Affiant believes that the forensic search of the Target Telephone automated records will aide [sic] law enforcement in identifying if Bouknight met with Graham and Bishop and sold Bishop drugs that could have taken her life. Additionally, the search of Graham's toll and cell site data could put Bouknight, Graham, and Bishop together just hours before Bishop's death. That would lead to possible charges being brought against Bouknight.
>
> WHEREFORE, Affiant makes this affidavit and prays the issuance of a Search Warrant in due form of law for the search of the above described device for the said property heretofore described, and for the seizure and safekeeping thereof, subject to the order of a Court having jurisdiction thereof, by the duly constituted officers of the law.

(Doc. 25-1 at 2-3 (emphasis in original).)

Judge Senterfitt found that there was probable cause to believe that the Laws of the State of Florida had been violated and authorized the issuance of a search warrant. (Doc. 25-1 at 4.) The search warrant, signed on September 27, 2018, provides as follows:

> WHEREAS, complaint on oath and in writing, supported by affidavit, having been made this day before the undersigned Judge of the Fourth Judicial Circuit, in and for Duval County, Florida;

4

AND WHEREAS, said facts made known to me have caused me to certify and find that there is a probable cause to believe that historically stored incoming and outgoing calls, and historical cell site data is being kept within the files of the common telephone carrier(s) described as follows:

> **The Historically Stored data for (904) 483-0628 to obtain incoming/outgoing call records, incoming/outgoing text messages, and historical cell site data within the automated files of the common telephone carrier (T-Mobile) for the dates of September 1, 2018 to September 7, 2018.**

Herein after referred to as the "Historically Stored Data["] within the files of (T-Mobile). The stored data believed to be the product of telephonic usage of Larry Bouknight II known for the purpose of violating the laws of Florida, and concealing the evidence relating to felony crime(s), to wit, Possession of a Controlled Substance (Heroin/Fentanyl) [in violation] of Chapter 893.13, Florida Statutes;

AND WHEREAS the facts establishing the grounds for this application are set forth in the affidavit of **Detective J.M. Dowling** of the Jacksonville Sheriff's Office- Narcotics Division;

NOW THEREFORE, T-Mobile is ordered to release The Historically Stored Data for **(904) 483-0628** to obtain incoming/outgoing call records, incoming/outgoing text messages, and historical cell site data within the automated files of the common telephone carrier (T-Mobile) for September 6, 2018.

(*Id.* at 1 (emphasis in original).)

In response to the warrant, T-Mobile produced a Microsoft Excel Spreadsheet containing comprehensive call data, including historical cell site location data for telephone number (904) 483-0628 for the period September 1, 2018 through September 7, 2018. (*See* Docs. 25-2, 25-3, 25-4.)

5

### III. Standard

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The Warrants Clause requires that, absent certain exceptions, "police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). "[A] warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Id.* at 165.

"The Fourth Amendment's requirement of probable cause for the issuance of a warrant is to be applied, not according to a fixed and rigid formula, but rather in the light of the 'totality of the circumstances' made known to the magistrate." *Massachusetts v. Upton,* 466 U.S. 727, 728 (1984) (per curiam) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "In dealing with probable cause, . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S. at 231.

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a

crime will be found in a particular place."[4]  *Id.* at 238.  Accordingly, "[a]n affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause[.]"  *Id.* at 239 (also stating that "a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause" will not do).  "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others."  *Id.*

"[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant."  *Upton,* 466 U.S. at 728.  "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'"  *Gates,* 462 U.S. at 236; *see also Upton,* 466 U.S. at 733 ("A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant."); *United States v. Miller*, 24 F.3d 1357, 1363 (11th Cir. 1994) (stating that "reviewing courts lend substantial deference to an issuing magistrate's probable cause determinations").  "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely

---

[4] "The nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation." *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990).

determined by the preference to be accorded to warrants." *Upton,* 466 U.S. at 734 (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).

When deciding whether a warrant was supported by probable cause, the reviewing court must consider only that information brought to the attention of the issuing judge. *United States v. Lockett*, 674 F.2d 843, 845 (11th Cir. 1982); *see also United States v. Schulz,* 486 F. Appx. 838, 841 (11th Cir. 2012) (per curiam); *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) ("When determining whether an affidavit establishes probable cause, we look only to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is irrelevant."). When affidavits are attached to a warrant, courts consider the affiants' statements in determining whether the warrant sufficiently identifies the alleged crimes. *See United States v. Martinelli,* 454 F.3d 1300, 1308 (11th Cir. 2006).

"[T]he defendant challenging the search carries the burden of showing the warrant to be invalid." *United States v. Osborn*, 630 F.2d 374, 377 (5th Cir. 1980).[5] "Affidavits supporting a search warrant are presumed valid." *Schulz,* 486 F. Appx. at 841 (citing *Franks*, 438 U.S. at 171). Under *Franks*, a defendant may challenge the veracity of an affidavit in support of a search warrant only if he makes "a substantial preliminary showing" that (1) the affiant "knowingly and

---

[5] All Fifth Circuit decisions entered before October 1, 1981 were adopted by the Eleventh Circuit as binding precedent. *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

8

intentionally, or with reckless disregard for the truth" included a false statement, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was necessary to the finding of probable cause. *Franks*, 438 U.S. at 155-56; *see also United States v. Van Horn*, 789 F.2d 1492, 1500 (11th Cir. 1986) (stating that *Franks* also applies to information omitted from an affidavit).

If the defendant makes that preliminary showing, "the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155-56. As explained in *Franks*:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

*Id.* at 171-72.

"In the event that at the hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence,

9

and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156; *see also Schulz,* 486 F. Appx. at 841 (citing *Franks*, 438 U.S. at 171-72) ("If the defendant then makes that threshold showing of deliberate or reckless falsity by a preponderance of the evidence, he is entitled to a new evaluation of probable cause with the affidavit stripped of the false statements.").

In reviewing the probable-cause determination, supporting affidavits, which "are normally drafted by nonlawyers in the midst and haste of a criminal investigation," should not be interpreted in a hyper-technical manner; rather, a realistic and common-sense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to issuing judges in their probable-cause determinations. *Gates,* 462 U.S. at 235, 236-37 & n.10 (citing *Ventresca,* 380 U.S. at 108-09); *see also Brooks*, 594 F.3d at 490 ("Although sloppiness may raise flags, it is not in any way fatal because search warrant affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation.'"). "Likewise, search and arrest warrants long have been issued by persons who are neither lawyers nor judges, and who certainly do not remain abreast of each judicial refinement of the nature of 'probable cause.'" *Gates,* 462 U.S. at 235.

## IV. Discussion

### A. The Parties' Arguments

Defendant argues that based on certain shortcomings and inconsistencies in Detective Dowling's affidavit, there was no substantial basis for the issuing state judge to conclude that under the totality of the circumstances probable cause existed for the issuance of the search warrant for the historically stored data for phone number (904) 483-0628. Specifically, Defendant argues that the affidavit failed to establish probable cause for the following reasons:

a. The affidavit failed to explain how phone number (904) 483-0628 was associated with Defendant, or how the investigators knew that Defendant used this number between September 1, 2018 and September 7, 2018.

b. The affidavit failed to explain the phone numbers used for the text messages arranging the alleged drug transaction. The affidavit failed to provide any details regarding the text messages between Defendant and Graham, only making conclusory statements that the text messages were indicative of a drug transaction.

c. Under "Investigative Need For Court Approval," the affidavit discussed "the forensic search of the Target Telephone automated records," but did not define the "Target Telephone" and indicated an intent to physically search the phone rather than obtain records from the mobile carrier.

d. Also, while under "Investigative Need For Court Approval," the affidavit indicated that the investigators were seeking a "search of Graham's toll

11

and cell site data," the affidavit previously stated that "the 'Target data' was the product of the use of Larry Bouknight II."

Defendant also argues that the search warrant was defective because it authorized the seizure of data for September 6, 2018 only, while the investigators actually obtained records for the period of September 1, 2018 through September 7, 2018 as referenced in other parts of the warrant and in the affidavit. As such, Defendant argues that the search exceeded the scope of the warrant and was, therefore, unreasonable under the Fourth Amendment.

The Government initially argues that Defendant has not made a substantial preliminary showing under *Franks* to receive an evidentiary hearing as to the veracity of the affidavit. The Government contends that the affidavit established probable cause and adequately connected Defendant to telephone number (904) 483-0628. Specifically, the affidavit alleged that Bishop met an unknown male, later identified as the Defendant, at a store located at 1762 Sheridan Street, and purchased $40 worth of heroin.[6] The affidavit explained that Graham arranged the transaction with Defendant via cell phone and was with Bishop when she purchased the drugs from Defendant. The affidavit noted that Graham showed Detective Dowling the text messages she had exchanged with Defendant in arranging the drug transaction. Based on this information, Detective Dowling

---

[6] When the affidavit was submitted to the state judge, the Medical Examiner's report had not yet revealed that the substance that caused Bishop's death was fentanyl rather than heroin.

12

believed that the historically stored data for phone number (904) 483-0628 would help the investigators determine whether Defendant met with Bishop and Graham on September 6, 2018 just hours before Bishop's death, for the purpose of selling the drugs that could have taken Bishop's life. According to the Government, all that information established that phone number (904) 483-0628 was associated with Defendant and explained how the phone was used during the relevant period.

Further, the Government explains that it is clear throughout the affidavit that Detective Dowling was seeking the data associated with telephone number (904) 483-0628, *i.e.*, "the Target Telephone." Additionally, both the affidavit and the warrant were clearly directed toward T-Mobile, indicating that the investigators were trying to obtain the historically stored data from the mobile carrier, rather than from a physical search of the phone.

To the extent the last paragraph in the warrant authorized the release of historically stored data for September 6, 2018 (the day of the victim's death) rather than for the full seven-day period, the Government argues that this was a typographical error (not on the affiant's part, though, because the affidavit specifically listed September 1, 2018 through September 7, 2018 as the relevant period). The Government explains that when the affidavit and the warrant are reviewed in their entirety, it is obvious that the data for the full seven days was sought. In sum, the Government contends that Defendant has failed to establish

that the search warrant was defective or that the issuing judge had no substantial basis for finding probable cause.

### B. Analysis

The undersigned agrees with the Government that Defendant is not entitled to an evidentiary hearing under *Franks* because he has failed to make a substantial preliminary showing that the affiant deliberately or recklessly made a false statement or omission in the affidavit, and that such statement or omission was necessary to the finding of probable cause. Defendant does not claim that Detective Dowling deliberately or recklessly made a false statement or omission in his affidavit. (*See* Tr. 11.) Although defense counsel seemed to argue at the November 13, 2019 hearing that the affidavit contained a false statement,[7] he did not claim that any such statement was made deliberately or recklessly and did not submit any offers of proof or affidavits/sworn statements in support of his position. (*See* Tr. 14, 18.) This alone is a sufficient reason to deny Defendant's request for an evidentiary hearing. *See United States v. Arbolaez*, 450 F.3d

---

[7] According to defense counsel, the affidavit falsely stated that the victim used the drugs at the same location that she purchased them: "Upon identifying the victim as Haley Bishop, it was learned that Bishop had bought and *used* heroin earlier in the day at 1762 Sheridan St." (Doc. 25-1 at 3 (emphasis added).) Defense counsel explained: "That was the location of the purchase, which is a convenience store of sorts, and it's clear, from materials that came out later in the investigation, that that was not the case. So that is a fact that is not true. I'm not alleging that that was reckless. I think it was probably more of a negligent oversight by the . . . officer." (Tr. 14.) Even if Defendant had submitted an offer of proof or an affidavit/sworn statement to show the falsity of the above statement, he would still not be entitled to an evidentiary hearing under *Franks* because the fact that Bishop did not *use* the drugs at the location where she purchased them is not material to the determination of probable cause.

14

1283, 1294 (11th Cir. 2006) (per curiam) (upholding the denial of a *Franks* hearing because there was "no affidavit or otherwise sworn statement alleging that [the officer] knowingly or recklessly included false statements in the search warrant affidavit," even though the evidence of a false statement was strong).

Furthermore, although Defendant attempts to "pick apart" the affidavit, probable cause is determined based on the totality of the circumstances. Accordingly, the Court will not engage in a piecemeal review of the different parts of the affidavit but will review it in its entirety. Viewed in this (correct) light, the affidavit adequately defines the "Target Telephone" as telephone number (904) 483-0628, which was connected to Defendant (and his use of the phone during the relevant period) through information provided by Graham and the text messages she shared with the investigators through which she arranged the drug transaction with Defendant.

By arguing that the affidavit failed to explain the phone numbers used for the text messages and to provide details regarding the nature of these messages, Defendant appears to question Graham's veracity. He argues that the affiant was essentially relying on the information provided by Graham without showing her reliability as a witness and without independently corroborating her statements. (*See* Tr. 13.) "But . . . requiring independent police corroboration— as a per se rule in each and every case—is contrary to *Gates* and other precedent," because "*Gates* criticizes per se rules for the determination of probable cause" and "independent police corroboration has never been treated

15

as a requirement in each and every case." *United States v. Brundidge*, 170 F.3d 1350, 1353 (11th Cir. 1999) (per curiam). "Under the *Gates* totality of the circumstances test, the 'veracity' and 'basis of knowledge' prongs . . . are not independent" and "a deficiency in one may be compensated for . . . by a strong showing as to the other." *Id.* at 1352-53.

Here, the information provided by Graham was based on her personal knowledge and participation in the drug transaction. She was a direct participant in the events in question, she apparently knew Defendant from previous dealings because she contacted him on his cellular phone,[8] and she was apparently the only other person (aside from Defendant) who was present during the transaction and could relay pertinent information about the events that transpired on September 6, 2018. Because the basis of Graham's knowledge was her

---

[8] Defendant points out that telephone number (904) 483-0628 was under the name "Rico 2" (rather than under Defendant's real name) in Graham's telephone contacts as shown by their text messages. (Tr. 13, 21; Doc. 35-1.) Given the nature of their transaction, however, it is not surprising that Graham would not use (or even know) Defendant's real name. The fact that the affidavit did not provide the specifics of how "Rico 2" was identified as the Defendant is not sufficient to defeat the finding of probable cause. Essentially, based on Graham's text messages, "Rico 2" had a telephone number (904) 483-0628, and that phone number (according to T-Mobile records) was associated with Defendant. Moreover, Graham was capable of confirming Defendant's identity based on her prior personal interaction(s) with him.

Defense counsel submitted copies of the text messages between Graham and Defendant, which he believed were important so the Court could "at least have some perspective as to what information was out there," but he conceded that this Court's review is limited to the four corners of the affidavit. (*See* Tr. 20-21; Doc. 35-1.) The Government did not object to making the text messages part of the record but reiterated that they are outside the four corners of the affidavit and, as such, would not normally be reviewed for purposes of *Franks*. (Tr. 21-22.) The undersigned does not believe that the absence of details about the text messages in the affidavit would defeat the finding of probable cause.

participation in arranging the transaction, the information provided by her is entitled to more weight.  *See Brundidge*, 170 F.3d at 1353 (citing *Gates*, 462 U.S. at 234) ("An 'explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [an informant's] tip to greater weight than might otherwise be the case.' . . . The [informant's] basis of knowledge made up for any weaknesses in [her] veracity.").  Additionally, Graham's statements should not be discredited even if the investigators did not have a record of her truthfulness or accuracy, which in any event Defendant does not contend.  *United States v. Wagner*, 989 F.2d 69, 73 (2nd Cir. 1993) (citing *Gates*, 462 U.S. at 237-38).  Thus, based on the totality of the circumstances, the information provided by Graham could be used to support the probable cause determination.

      Further, the affidavit is sufficiently clear that it sought the historically stored data for the phone from the mobile carrier rather than a physical search of the device.  Defense counsel seemed to concede this point at the hearing despite arguing otherwise in his Motion.  In addition, the affidavit was clear that "the 'Target data' was the product of the use of Larry Bouknight II."  As such, the reference to "the search of Graham's toll and cell site data" (which the investigators likely performed in order to "put Bouknight, Graham, and Bishop together just hours before Bishop's death") was likely an oversight, which in any event does not distract from the investigators' purpose, namely, to obtain Bouknight's historically stored data.

Similarly, the only reference to September 6, 2018 (the date of the victim's death) in the ordered paragraph of the warrant is apparently an oversight by the issuing state judge because both the warrant and the affidavit clearly state that the historically stored data should be provided for the period September 1, 2018 to September 7, 2018.  As the bolded paragraphs in both the warrant and the affidavit provide that the relevant period for the data is September 1, 2018 to September 7, 2018, the Court is not convinced that the search exceeded the scope of the warrant.

At the hearing, defense counsel also vaguely argued that the warrant was not supported by probable cause to believe that the evidence sought would aid in a conviction for a particular offense.  (Tr. 11.)  Here, the warrant clearly stated that the crime for which the evidence was sought was possession of a controlled substance (heroin/fentanyl) in violation of Chapter 893.13 of the Florida Statutes. Defense counsel seemed to argue that the warrant did not establish "a nexus between the evidence sought and the crime itself" (Tr. 12), and "in this case the probable cause would be that the target phone number will provide evidence of [Defendant's] whereabouts on the date in question" (Tr. 11).  That is precisely why both the warrant and the affidavit provided for "historical cell site data" of Defendant's phone, which would provide evidence of his whereabouts during the relevant period.  *See Carpenter v. United States*, 138 S. Ct. 2206, 2211, 2216 (June 22, 2018) ("Each time the phone connects to a cell site, it generates a time-stamped record known as cell-site location information (CSLI). . . .  Much

like GPS tracking of a vehicle, cell phone location information is detailed, encyclopedic, and effortlessly compiled.").[9]

The Court finds the content of the affidavit sufficient, under the totality of the circumstances, to establish probable cause to issue the search warrant. As stated earlier, the affidavit alleged that Bishop met an unknown male, later identified as the Defendant, at a store located at 1762 Sheridan Street, and purchased $40 worth of heroin. The affidavit explained that Graham arranged the transaction with Defendant via cell phone and was with Bishop when she purchased the drugs from Defendant. The affidavit noted that Graham showed Detective Dowling the text messages exchanged with Defendant in arranging the drug transaction. Based on this information, Detective Dowling believed that the historically stored data for phone number (904) 483-0628 would help the investigators determine whether Defendant met with Bishop and Graham on September 6, 2018 just hours before Bishop's death, for the purpose of selling the drugs that could have taken Bishop's life.

---

[9] In *Carpenter*, the Supreme Court held that the Government conducted a search under the Fourth Amendment when it accessed, from defendant's wireless carrier, historical cell-site records revealing the location of defendant's cell phone whenever it made or received calls, spanning a period of seven days. *Carpenter*, 138 S. Ct. at 2217 n.3, 2221. The Court explained: "We decline to grant the state unrestricted access to a wireless carrier's database of physical location information. In light of the deeply revealing nature of [cell-site location information], its depth, breadth, and comprehensive reach, and the inescapable and automatic nature of its collection, the fact that such information is gathered by a third party does not make it any less deserving of Fourth Amendment protection." *Id.* at 2223.

Because the affidavit provides a substantial basis for the issuance of the warrant, the warrant is valid and the fruits of the search are admissible. As such, it is unnecessary to analyze the good faith exception argument.[10] *See Miller*, 24 F.3d at 1360.

## V. Recommendation

Based on the foregoing, it is respectfully **RECOMMENDED** that the Motion (**Doc. 25**) be **DENIED**.

**DONE AND ENTERED** at Jacksonville, Florida, on November 27, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Hon. Marcia Morales Howard
United States District Judge

Counsel of Record

---

[10] The "good faith" exception to the rule requiring the suppression of evidence for violations of the Fourth Amendment keeps evidence from being suppressed when law enforcement officers obtain evidence through objective good-faith reliance on a facially valid warrant that is later found to be unsupported by probable cause. *United States v. Leon*, 468 U.S. 897, 913 (1984). The good faith exception announced in *Leon* does not apply in the case of (1) a false or reckless affidavit; (2) where the issuing magistrate wholly abandons his judicial role; (3) where the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where the warrant itself is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 923.